```
                                              FILED
                                    CLERK, U.S. DISTRICT COURT

                                       8/20/25

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY: _____MRV_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 2:25-cr-00690-SB |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| CORY TAYLOR WRIGHT, | |
| Defendant. | |

The Acting United States Attorney charges:

[18 U.S.C. § 1343]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   The Naval Facilities Engineering and Expeditionary Warfare Center was a command within the Department of the Navy (the "Navy") that included the Mobile Utilities Support Equipment group ("Muse") located in Port Hueneme, California.  Muse was responsible for providing management, technical, and logistics support for power systems, including large generators, for certain United States Department of Defense operations around the world, including active combat zones.

2.   To accomplish its mission, Muse personnel would engage with a prime contractor to procure goods and services.  In 2015, the Navy awarded Prime Contractor 1 a contract for products and services related to critical power support, including the "purchase, installation, renovation, alterations, and repair" of the Navy's critical power systems and supporting facilities.  Under the contract, Prime Contractor 1 could issue task orders to subcontractors, which were essentially contracts to procure specific products and/or services.

3.   Defendant CORY TAYLOR WRIGHT was enlisted in the Navy from February 1997 through May 2017, when he retired.  Throughout various points during the period 2005 through 2017, defendant WRIGHT worked for Muse.

4.   Co-Conspirator 1 was enlisted in the Navy until approximately 2021, when he retired.  Throughout various points from 2005 through 2019, Co-Conspirator 1 held various positions at Muse, including supervisory positions that allowed Co-Conspirator 1 to exercise considerable influence over contractual matters, including prime contracts and task orders.

5.   When defendant was nearing retirement in or around late-2016, defendant and Co-Conspirator 1 agreed to create the company, C&C Power Solutions LLC, ("CCP") with the understanding that Co-Conspirator 1 would be a 50% partner in the business once Co-Conspirator 1 retired from the Navy.  Among other things, Co-Conspirator 1 told defendant WRIGHT that he would ensure CCP received Navy contracts, including task orders from Prime Contractor 1.  Based on Co-Conspirator 1's management position within Muse and statements made by Co-Conspirator 1, defendant understood that Co-Conspirator 1

2

could use his position to direct Prime Contractor 1 to use -- and pay -- specific subcontractors like CCP and could otherwise exercise significant control over directing other contracts to CCP.

B.    SCHEME TO DEFRAUD

6.    Beginning on a date unknown, but no later than in or around December 2016, and continuing until at least in or around August 2022, in Ventura County, within the Central District of California, and elsewhere, defendant WRIGHT and Co-Conspirator 1, together with others known and unknown to the Acting United States Attorney, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the Navy as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of the Navy by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

7.    The fraudulent scheme operated and was carried out, in substance, as follows:

a.    Defendant WRIGHT would create CCP with the understanding that Co-Conspirator 1 would ensure that CCP would receive Navy contracts both from Prime Contractor 1 and later directly from the Navy itself.  In exchange for directing these Navy contracts to CCP, defendant WRIGHT would pay Co-Conspirator 1 kickbacks and would agree that Co-Conspirator 1 would take a financial interest in CCP when Co-Conspirator 1 retired from the Navy.

b.    To provide initial capital for CCP's business operations, Co-Conspirator 1 would cause Prime Contractor 1 and

subcontractors to issue payments to CCP for products and services that CCP did not provide.

c. Defendant WRIGHT and Co-Conspirator 1 would engage in a bid rigging scheme to ensure that CCP received subcontracts from Prime Contractor 1. For example, in connection with a 2017 task order worth approximately $790,496, defendant and Co-Conspirator 1 caused the submission of multiple fake contract bids to Prime Contractor 1 that contained estimated project costs that were significantly higher than the bid that CCP submitted.

d. At Co-Conspirator 1's direction, defendant WRIGHT would make kickback payments to Co-Conspirator 1 and others to whom Co-Conspirator 1 directed defendant to pay, including payments to Co-Conspirator 1's soccer club ("Club Soccer Team"), and a sporting goods store to provide services to Co-Conspirator 1's soccer club ("Sporting Goods Company").

e. Defendant WRIGHT would generate false and fraudulent invoices that represented CCP had completed the task orders and delivered the requested products to Muse when, in fact, CCP had not completed its contractual obligations. Defendant WRIGHT's submission of these false and fraudulent invoices would then cause Prime Contractor 1 to submit invoices containing the false and fraudulent representations to the Navy, causing the Navy to issue payments on the invoices.

f. On or before September 2017, defendant, Co-Conspirator 1, and others known and unknown, would conspire to secure CCP as the next prime contractor with Muse, which the co-schemers knew would be worth many tens of millions of dollars to the contract's recipient. Among other things, defendant and Co-Conspirator 1 would

4

take steps to deceive the Navy and Muse and rig the bidding process for the new prime contract, including the following:

       i.   In preparation for defendant WRIGHT submitting CCP's bid for the prime contractor, in text messages exchanged in October 2017, Co-Conspirator 1 and defendant would discuss the need to bolster CCP's past contract performance in order to obtain the "big contract."

       ii.  Co-Conspirator 1 would provide input to defendant WRIGHT on CCP's bid proposal to ensure it was accepted by the Navy.

       iii. Defendant WRIGHT and Co-Conspirator 1 would work together to complete a fraudulent Past Performance Questionnaires ("PPQ") for CCP that misrepresented CCP's performance.  Among other things, Co-Conspirator 1 would include in the PPQ the following: "[CCP's] expertise enabled the project to meet new delivery time of March 2019.  CCP was hired to recover from prime contractor's delay and brought the project back within compliance and resulted in Muse receiving a final product that met/exceeded PWS requirements.  The product exceeded expectations at every level from design, functionality, to production and quality of the product.  The Contractor management of funds and required administrative work was outstanding.  The Contractor exceeded all expectations in all areas. Overall, CECS(SCWS) [Co-Conspirator 1] stated that his agency would rate C&C Solutions, LLC's 'Excellent.'"

       iv.  Co-Conspirator 1, who was still employed at Muse, would conceal his role at, and financial interest in, CCP, including Co-Conspirator 1's direct involvement in CCP's bid proposal for a 2019 Prime Contract with the Navy (the "2019 Prime Contract").

g.   As a result of defendant WRIGHT and Co-Conspirator 1's coordination on CCP's prime contract bid, and based on the materially false and fabricated statements therein, the Navy awarded a prime contract to CCP on or about July 12, 2019.  From the time CCP was awarded the 2019 Prime Contract until the Navy terminated the final three task orders awarded to CCP, two in December 2022 and one in February 2023, defendant WRIGHT would continue to cause the submission of materially false documents, including invoices, to the Navy for the purpose of obtaining money that defendant WRIGHT and CCP were not entitled to receive.

h.   Based on the co-schemers' fraud and bid rigging scheme, defendant WRIGHT and his co-schemers defrauded the Navy out of at least $9,128,515.93.

C.   <u>USE OF THE WIRES</u>

8.   On or about March 31, 2020, for the purpose of executing the above-described scheme to defraud, defendant WRIGHT caused a wire communication in interstate and foreign commerce, namely, an email communication from Prime Contractor 1 in Maryland to Navy personnel located in Port Hueneme, California, seeking information about payment related to Task Order 44.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.     Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in the sole count of this Information.

2.     The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

///
///
///
///
///
///
///
///
///
///
///
///

1          3.     Pursuant to Title 21, United States Code, Section 853(p),

2     as incorporated by Title 28, United States Code, Section 2461(c), the

3     defendant, if so convicted, shall forfeit substitute property, up to

4     the value of the property described in the preceding paragraph if, as

5     the result of any act or omission of the defendant, the property

6     described in the preceding paragraph or any portion thereof (a)

7     cannot be located upon the exercise of due diligence; (b) has been

8     transferred, sold to, or deposited with a third party; (c) has been

9     placed beyond the jurisdiction of the court; (d) has been

10    substantially diminished in value; or (e) has been commingled with

11    other property that cannot be divided without difficulty.

                                        BILAL A. ESSAYLI
12                                      Acting United States Attorney

13

14

15                                      DAVID T. RYAN
                                        Assistant United States Attorney
16                                      Chief, National Security Division

17                                      IAN V. YANNIELLO
                                        Assistant United States Attorney
18                                      Chief, Terrorism and Export Crimes
                                        Section
19
                                        THOMAS F. RYBARCZYK
20                                      Assistant United States Attorney
                                        Chief, Public Corruption and Civil
21                                      Rights Section

22

23

24

25

26

27

28